IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KALEN NIELSEN, ) | |
|     Petitioner, ) | Case No. 7:19cv00657 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| HAROLD W. CLARKE, ) | By: Michael F. Urbanski |
|     Respondent. ) | Chief United States District Judge |

    Kalen Nielsen, a Virginia inmate proceeding with counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2015 Nelson County criminal convictions. The matter is before the court on respondent's motion to dismiss. After reviewing the record, the court concludes that respondent's motion must be granted. As conceded by Nielsen, his petition is untimely, and the court finds that he has failed to satisfy the gateway requirements of the "actual innocence" exception to overcome the statute of limitations.

I.

    On July 22, 2014, a Nelson County grand jury charged Nielsen with aggravated malicious wounding of his infant son, in violation of Va. Code § 18.2-51.2, and child abuse, in violation of Va. Code § 18.2-371.1. On January 22, 2015, pursuant to a written plea agreement, Nielsen reluctantly pled guilty to child abuse and to malicious wounding, a lesser included offense under the aggravated malicious wounding indictment. The 58-page transcript of the plea hearing reflects that Nielsen adamantly denied his guilt, expressed dissatisfaction with his attorney, and stated that he felt he had no choice about pleading guilty to get the sentence recommended in the agreement. The court repeatedly offered to

enter a plea of "not guilty" and allow the case to go to trial, but Nielsen said he believed the plea agreement was in his best interests.  The court, finding Nielsen's pleas to be knowing and voluntary, accepted his guilty pleas.  Based upon the plea agreement and Nielsen's waiver of a presentence report, the trial court sentenced Nielsen to 15 years for malicious wounding, with 5 of those years suspended, and 5 years for child abuse, all suspended, with his active incarceration followed by 10 years of probation, the first 2 of which are to be supervised.  The court entered its judgment order that same day, and Nielsen did not appeal.

The factual basis supporting the guilty plea, was presented by the prosecutor at the plea hearing as follows:

> [T]his incident occurred on April 2, 2014, at approximately 11:48 a.m.  The defendant, Kalen Nielsen, placed an emergency 9-1-1 call, answered by the Nelson County dispatchers.  He placed this call from his home in Nelson County located . . . in Gladstone, Virginia.
>
> Nielsen, who was home alone at the time with his two-year-old daughter and his three-month old son, initials K.N., complained of the three-month-old as having a seizure.  Nielsen stayed on the call until Jennifer Burskman (ph), the emergency medical technician from the Gladstone Rescue Squad arrived at 12:09 p.m.
>
> Because of the description of the condition of the child, the 9-1-1 dispatcher had already called for an (sic) medical evacuation helicopter from the Centra One Flight Services at Lynchburg General Hospital.
>
> Ms. Burskman, when observing the child, knew immediately that the child was in great distress and suspected foul play.  She notified the Nelson County Sheriff's Office.
>
> Deputy Ethan Wood, of the Nelson County Sheriff's Office responded to the Gladstone Rescue Squad address where the child had been transported to await the arrival of the Centra one (sic) helicopter.

When Deputy Wood arrived at 12:35, the child was being placed in the helicopter for transport to UVa Hospital. Deputy Wood then went to Nielsen's Gladstone address in an attempt to locate [Nielsen], but he was not there.

At the UVa Hospital emergency room, the child was met by a Dr. Sara Sutherland, who performed emergency medical procedures, including intubation for oxygen and administering various medications to save the life of the child.

Dr. William Harman, a critical care pediatrician was the admitting physician and will testify that K.N. was near death when brought in.

The child was blue and his PH test of the baby's blood indicated that he had suffered from severe oxygen deprivation.

Dr. Julie Matsumoto, a neuroradiologist examined the CAT scan and MRI and will testify that these images revealed brain hemorrhages and brain swelling. Some of the bleeding appeared to be several days old.

A scan of the infant's eyes showed retinal bleeding. X-rays of the child revealed that the child had several rib fractures in both the front and the back, commonly referred to as bucket-handle fractures that can result from the child being tightly squeezed. The fractures are described in the medical records as healing. Dr. Jill McIlhenny, a pediatric radiologist who examined the x-rays will testify that it takes seven to ten days for rib fractures to display this characteristic.

These attending physicians suspected that these injuries were non-accidental. In fact, Dr. Susan Lam (ph), who had (sic) testified as a Commonwealth's expert, will state to a reasonable degree of medical probability that this constellation of injuries, brain swelling, brain hemorrhages and retinal bleeding is indicative of what is known as shaken baby syndrome or abusive head trauma caused by the rapid acceleration and deceleration of the baby's head, as the baby is shaken. These injuries are not caused by accidental falls nor by latent conditions in the child's brain unobserved since birth.

> The bucket-handled rib fractures are also indicative of this syndrome because (sic) the likelihood that the child was squeezed very tightly while being shaken.
>
> The healing rib fractures and the old brain bleeds raised suspicions of earlier abuse.
>
> Investigator Billy Mays, of the Nelson County Sheriff's Office, having been informed by Deputy Wood of the situation, went to the hospital to commence his investigation. He was first briefed by Dr. Sutherland and Harmon.
>
> He then questioned [Nielsen] about the incident. At first [Nielsen] denied that he had injured his son, claiming that the two-year-old daughter had recently dropped a toy truck on the baby's head. But during further questioning, he admitted to both shaking his son that day and on earlier occasions.
>
> The following day, April 3, 2014, [Nielsen] was arrested and charged with malicious wounding and felony child abuse.
>
> Although near death when admitted, the child survived, and the brain and eye injuries are healing. He's still being monitored by UVa Hospital for any long-term vision or neurological damages, damage caused by these injuries.
>
> Dr. Kenneth Norwood, developmental pediatrician at the UVa Hospital, was still seeing the child, would testify that because of the brain injuries, the child would likely would (sic) suffer either from mental retardation or learning disabilities.

(R. at 179–84.)

In his allocution after the government's proffer of evidence, Nielsen said he was "being overstepped on something I did not do." (Id. at 186.) He suggested that the police should be investigating the in-home childcare provider (Paula Jordan), who had written down her knowledge of several incidents in which the baby may have been injured while

4

under her care. He also mentioned a Dr. "Shower (ph)"[1] who opined that the baby had a congenital collection of fluid on his brain, making him more susceptible to hemorrhages. (Id. at 190–91.) Nielsen concluded by reiterating that he was taking the plea deal to get home to his wife and children as soon as possible.

On October 24, 2016, the Supreme Court of Virginia received Nielsen's pro se petition for a writ of habeas corpus, alleging that Nielsen's trial counsel was ineffective for (1) failing to interview defense witnesses: Dr. Scheller, Adam Wilburn, Paula Jordan, and Cindy Nielsen; (2) erroneously advising Nielsen to plead guilty to avoid a possible life sentence; and (3) erroneously advising Nielsen that a secretly recorded audiotape of his conversation with Detective Mays would be entered into evidence against him. Nielsen also alleged denial of his right to due process because his plea was entered involuntarily, and the plea agreement was provided to him without sufficient time for him to consider it. The court reviewed the file, including the transcript of the plea hearing, affidavits from Wilburn, Jordan, and Cindy Nielsen, a report from Dr. Scheller, and the pleadings of the parties. The court then denied the writ in an opinion/order entered April 21, 2017. In finding that Nielsen established neither defective performance of counsel nor prejudice, the court relied heavily on the letter to Nielsen from his attorney, dated January 5, 2015, which letter was acknowledged by Nielsen's signature. (Id. at 136–41.) The letter summarized the charges against Nielsen, the elements of those charges, the range of punishment for those charges, the Commonwealth's evidence against him, the defense evidence (including Dr. Scheller's

---

[1] Likely, this reference was to Dr. Scheller, the defense doctor consulted by trial counsel, whose opinion counsel communicated to Nielsen by letter dated January 5, 2015. That was the opinion expressed by Dr. Scheller in his email with counsel and in his subsequent letter attached to Nielsen's § 2254 petition as exhibit 4. (ECF No. 1-5.)

5

opinion), possible pre-trial motions (including a motion to suppress his surreptitiously recorded statements to Detective Mays) and the likely outcome of those motions, and the likely outcome of a jury trial (finding him guilty of something, but probably less than aggravated malicious wounding), though the outcome could not be guaranteed. (Id.) The court denied Nielsen's due process claim for an involuntary plea because the issue should have been raised in a direct appeal, not in a habeas petition, based on Brooks v. Peyton, 210 Va. 318, 321–22, 171 S.E.2d 243, 246 (1969).

More than a year later, Nielsen, by counsel, filed the § 2254 petition on September 27, 2019. In the petition, Nielsen acknowledges that his petition is untimely and raises issues that may have been procedurally defaulted because they were not first presented to the Supreme Court of Virginia in the same manner. However, he claims that his case falls within the exception for actual innocence recognized by McQuiggin v. Perkins, 569 U.S. 383 (2013) and Schlup v. Delo, 513 U.S. 298 (1985), allowing the court to reach the merits of his otherwise untimely claims of federal constitutional rights violations. Counsel alleges that Nielsen received constitutionally ineffective assistance of counsel because trial counsel overstated the strength of the government's case and advised Nielsen to take the plea agreement even though (1) Nielsen had a viable defense for going to trial; (2) Nielsen's inculpatory statements were involuntary due to police intimidation and were taken in violation of Miranda; and (3) Nielsen did not agree with the Commonwealth's proffered evidence, and thus, was not knowingly and voluntarily entering his plea of guilty.

## II.

At the outset, the court concurs with both parties that Nielsen's petition is untimely. Because he did not appeal entry of the judgment order on January 22, 2015, the judgment became final when the time for appeal expired, Monday, February 23, 2015. Nielsen had one year from that date in which to file his federal petition, which was due on or before February 23, 2016. 28 U.S.C. § 2244(d)(1)(a). Under § 2244(d)(2), a properly filed petition for state post-conviction relief will toll the running of the one-year limitation. However, if the properly filed state petition is filed after the limitation has expired, there is nothing left to toll; the federal limitations period has run, and filing a state petition does not revive the expired claim. Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000); Nie v. Commonwealth of Virginia, No. 2:19-cv-481, slip. op. at 5 (E.D. Va. April 14, 2020). Nielsen's state habeas was filed October 24, 2016, eight months after the federal statute of limitations had expired; his federal petition was filed three and a half years after the deadline.

The Supreme Court has recognized a miscarriage-of-justice exception that seeks to "balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." Schlup, 513 U.S. at 324. A credible claim of actual innocence serves as a "gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Id. at 315. Such a claim must be supported by new reliable evidence.

> Without any new evidence of innocence, even the existence of a conceivedly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.

Id. at 316. Nielsen offers the 2018 affidavit of Paula Jordan as that "new evidence."

7

The evidence is not new, however. Nielsen knew that Jordan had cared for his children when he entered his pleas and when he filed his state habeas petition. Nielsen knew that his son had accidents while in Jordan's care. Nielson's attorney subpoenaed Jordan for trial, and Jordan even wrote down some of her recollections for Nielson's trial counsel. (R. at 162–63.) Nielson told the trial court that he and his wife had made several complaints about Jordan, "the individual that abused my children," and nothing had been done. (Id. at 175.) Nielson cannot now credibly say that the information in her affidavit is new evidence.

Further, the evidence does not change the overall picture of the case available in 2015, when Nielsen chose to accept a plea agreement rather than risk a trial. The finality interests served by limiting the availability of collateral attack are particularly compelling for convictions based on guilty pleas. Bousley v. United States, 523 U.S. 614, 621 (1998). Nielsen's guilty plea does not deprive him of the right to make an actual innocence claim, if he can meet the stringent requirements for doing so, but in the present case, he has fallen far short. The new evidence he offers is not new, nor does all the evidence, admissible and inadmissible combined, persuade the court, more likely than not, that no reasonable juror would have convicted him, which is the standard required by Schlup. 513 U.S. at 327. At most, the evidence demonstrates that Nielsen had a potentially defensible case, the outcome of which could not be predicted with certainty because a jury would resolve disputed questions of fact. Recognizing that the evidence was sufficient to support a conviction, if rendered by the jury, Nielsen chose to enter a guilty plea even as he maintained his innocence. The Supreme Court recognized fifty years ago that a court commits no error by accepting a voluntary and intelligent guilty plea from one who maintains his innocence, if

8

there is sufficient evidence to support a conviction, because "guilt, or the degree of guilt, is at times uncertain and elusive," and a man "must be permitted to judge for himself" the relative risk he is willing to take. North Carolina v. Alford, 400 U.S. 25, 33 (1970) (internal citations and quotations omitted). Nielsen voluntarily made a choice to plead guilty, while maintaining his innocence, to secure an active sentence of 10 years rather than risk the possibility of receiving 20 years or more from a jury. He explained the reasons for his decision to the judge, namely so that he could get home to his family sooner. The decision was both voluntary and thought-out, albeit one he may now regret having made.

Because Nielsen has failed to establish the "actual innocence gateway," the court must conclude that his claim is untimely.

### III.

When issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 338 (2003); Slack v. McDaniel, 529 U.S. 473 483–84 (2000). In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the action states a debatable claim of the denial of a constitutional right. Gonzalez v. Thaler, 565 U.S. 134, 140–41 (2012). Nielsen has not made a substantial showing of the denial of a constitutional right.

9

## IV.

For the foregoing reasons, the court will grant respondent's motion to dismiss, dismiss the petition for a writ of habeas corpus, and deny a certificate of appealability.

**ENTER:** This __21st__ day of September, 2020.

        Michael F. Urbanski
        Chief U.S. District Judge
        2020.09.21 13:46:16 -04'00'

_____
Chief United States District Judge